23 C.C.P.A.(Patents)

## In re ENGLE.
### Patent Appeal No. 3657.

Court of Customs and Patent Appeals.
June 8, 1936.

Kwis, Hudson & Kent, of Cleveland, Ohio (J. T. Hoffmann, of Cleveland, Ohio, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The Board of Appeals of the United States Patent Office affirmed the decision of the Primary Examiner, which decision refused to allow claims 12, 13, and 14 of appellant's application for a patent upon a claimed improvement in air valve. The matter has been brought here by appeal.

Claims 12 and 14 follow:

"12. A valve comprising a resilient tubular member closed at one end and including a substantially cylindrical section, a transverse slit in the side of said cylindrical section extending less than 360° about the circumference thereof, and an actuating member provided with a head embedded in the closed end of said tubular member extending through said cylindrical section projecting beyond the other end of said tubular member and adapted to open said slit upon longitudinal movement thereof, said actuating member being smaller than the opening in said tubular member so as to provide an air passage between said members."

"14. A valve assembly comprising a member provided with an aperture, a resilient tubular rubber valve member closed at one end and including a substantially cylindrical section positioned over said aperture and supported adjacent the open end thereof with the closed end extending into said member, a transverse slit in the side of said cylindrical section normal to the axis thereof and extending less than 360° about the circumference of said tubular valve member, said slit being so positioned that the side walls of said tubular member above and below the same will be of approximately equal rigidity, and an actuating member smaller than the opening in said tubular valve member connected to the closed end of said tubular valve member extending through said cylindrical section and projecting beyond the other end of said tubular member, said actuating member being adapted to open said slit upon longitudinal movement thereof and prevent collapse of the side wall of said tubular member under pressure."

The disclosure of the appellant is of an air valve for use in connection with inflatable articles, such as automobile tires. The device is thus explained by the Board of Appeals: "The three claims on appeal are directed to the structure of a valve designed to control the flow of air to or from a pneumatic or similar article. Appellant's valve is essentially a cylindrical,

rubber tube closed at one end and flanged at the other and provided intermediate its ends with a transverse slit through which air may be forced from the inside outwardly and through which it may be permitted to flow in the reverse direction upon elongation of the tube through the use of an actuating member in the form of a rod embedded in the closed end of the tube and extending from the open end thereof. The actuating member last referred to is of such size that, while permitting passage of air between the same and the walls of the tube, it has a tendency to prevent material collapse of the tube under external pressure."

The claims were rejected upon the following references: Ives et al., 481,762, August 30, 1892; Gray, 490,904, January 31, 1893; Gray (Brit.) 22,007, March 9, 1895; Courtney, 545,455, September 3, 1895; Mohs, 614,968, November 29, 1898; Gutkind et al. (German), 375,053, of 1922.

An examination of these various references shows that most of the features relied upon by the appellant are shown by them.

The valve of the appellant is a rubber cylindrical tube, closed at one end and slitted in the side which projects inwardly in the valve stem. When air is forced into the valve stem from the air pump or other mechanism, the rubber cylindrical valve will be elongated and the slit in the side will open, permitting air to enter. When the pressure from outside is relieved, the interior pressure from the tire will force the slit shut by means of the pressure upon the resilient walls of the valve. This principle is old, as shown by the references. It is shown by practically all of them, including the patent to Gray, No. 490,904, to Courtney, No. 545,455, the German patent to Gutkind et al., No. 375,053, and the British patent to Gray, No. 22,007. These various patents also show, to a degree, the same mechanical operation. In some of them the slit is lateral and in some longitudinal, but the principle of operation is practically the same.

One feature, however, is relied upon by the appellant, as to which there is conflict between the tribunals of the Patent Office and the appellant. This is as regards the actuating rod which extends through the valve and which is used in opening the same, and which, also, according to the appellant, prevents the collapse of the walls of the valve. The Board of Appeals states as to this: "The patent to Ives et al. is relied on primarily to show it old to embed a valve-actuating member in the rubber of the valve."

We have examined the patent to Ives with some care, in view of the fact that the appellant contends the rod of Ives is not embedded in the rubber in that patent with the meaning which is given to these words by the appellant in his disclosure. The appellant explains, in his specification, that his actuating pin has a rounded head thereon, and that this head is entirely embedded in, surrounded by, and covered with the rubber at the closed end of his valve. This, he argues, is not the case with the Ives patent, or with any other reference. In this statement, we are inclined to agree with the appellant. The patentee Ives states: " * * * To permit the deflation of the tire, the plunger H, carried in a longitudinal perforation in the shank and bearing against the inner side of the rubber cap, is depressed, as indicated in Fig. 2, thereby elongating the cap I and decreasing the diameter of said cap to an extent that will permit the air contained within the tire C to pass by and out."

An examination of the drawings in that patent discloses quite plainly that the actuating pin is not connected with or attached to the rubber portion of the valve, but rests in a depression upon the top thereof.

It is true that the term "embed" is sometimes used with the meaning given to it by the Solicitor for the Patent Office in his brief. That is the meaning "lying upon." Webster's New International Dictionary thus defines the word: "Embed, v. t. To lay as in a bed; to lay in surrounding matter; to bed; as, to embed a brick in mortar; specif., Microscopy, to place (a substance) in a mass of wax, paraffin, or other material, to give it support while it is being cut by a microtome."

It is quite obvious that the word "embedded" should be given the meaning which it is contended by appellant should apply here; namely, that the head of the actuating pin was surrounded by the rubber substance of the valve.

The appellant argues that this feature is important, inasmuch as it firmly fixes the actuating pin within the valve so that it cannot be easily lost or misplaced. Other advantages are also claimed for it.

In our opinion, none of the cited references show this feature. Claims 12 and 13 expressly recite the embedding of the pin. Claim 14 varies the language somewhat and reads that the pin is "connected to" the closed end of the valve. Neither is such a connection shown by any of the references.

Because of this feature, we are of opinion that the claims should be allowed, and the decision of the Board of Appeals is reversed.

Reversed.